## STATE EX REL. GEORGE T. DANIELSEN v. RALPH H. TAHASH.

141 N. W. (2d) 390.

March 11, 1966—No. 39,600.

*Kelly & Finley* and *R. Donald Kelly,* for appellant.

*Robert W. Mattson,* Attorney General, and *J. Earl Cudd,* Special Assistant Attorney General, for respondent, warden of State Prison.

MURPHY, JUSTICE.

This is an appeal from an order discharging a writ of habeas corpus. By his petition, George T. Danielsen, an inmate of the State Prison at Stillwater, sought release from custody on the ground that as an indigent he had been denied the right to appeal from his conviction for the offense of first-degree robbery.

From the record it appears that on June 26, 1957, the defendant on arraignment entered a plea of not guilty to the indictment. He was found guilty of the charge by jury verdict on October 14, 1957. Subsequently,

the county attorney filed three informations charging the defendant with three previous felony convictions. By separate jury verdicts he was found guilty of these charges, and on October 22, 1957, judgment was entered and sentence imposed. By reason of the prior convictions his sentence for first-degree robbery was increased.[1] He is now serving a sentence of from 10 years to life. At his trial defendant was represented by the public defender. It appears from the record that defendant disagreed with the public defender as to how his defense should be presented. He also disagreed with the way in which the trial court conducted the case. At the time sentence was imposed he informed the court that he would like to appeal and was advised that the law, as it then existed, provided for his defense at trial by the public defender but that if he wished to appeal he would have to assume the responsibility of finding counsel, and that the statute provided for payment of such counsel in the event the appeal was taken in good faith.[2] He did not ask for appointment of an attorney to represent him on appeal and the public defender did not want to continue to represent him. The trial court stated, "I would say your position now is to make your motion for a new trial, either engage Counsel or work it out yourself, and in proper time I will hear your motion." He was advised that he had 15 days from the date of sentencing to make a motion for a new trial, or "you have further time if you order a transcript of the settled case."

On November 14, 1957, after defendant was committed to the custody of prison authorities, he mailed to the clerk of the District Court of Ramsey County a notice of appeal and an affidavit and motion to appeal in forma pauperis. These papers were mailed back by the clerk with the information that the appeal could not be filed until defendant submitted the necessary filing fee and bond and that the clerk could not accept his pauper's oath in lieu of the fee and bond.

In addition to the facts already stated, the district court, on hearing of the habeas corpus petition, found that on October 25, 1957, the peti-

---

[1] Habitual Criminal Act, Minn. St. 1961, §§ 610.28 to 610.32.

[2] Minn. St. 611.07 then in effect; amended by L. 1965, c. 45, § 68. For representation by public defender, see Minn. St. 611.14, et seq. (L. 1965, c. 869).

tioner had on deposit at the State Prison $39.41, of which amount $25 "had been transferred by the prison authorities from a previous account balance which Petitioner had to his credit when he was paroled in July, 1956." The court also found that this amount fluctuated from month to month thereafter from a maximum of $45.53 to a minimum of $15.55 during the 6-month period when he might have perfected his appeal. The court further found that "[p]etitioner is now a pauper in that he does not have property, real or personal, in excess of $100.00."

The court further found that the petitioner failed to adequately serve a copy of his notice of appeal upon the attorney general as required by Minn. St. 632.02, and concluded that because of the failure to comply with the statutes relating to appeal the district court lacked jurisdiction to consider the issues raised.[3]

While this court is reluctant to interfere with the findings of the district court, it seems to us that its determinations as to indigence and compliance with the provisions of the statute relating to service of notice on the attorney general are based upon evidence which is marginal and tenuous, and that the conclusions reached are at variance with the spirit of recent United States Supreme Court decisions which discourage a narrow construction of procedural rules which would deny a convicted defendant the right to appeal. That this defendant was obviously an indigent is recognized by the fact that the public defender was appointed to represent him at the trial level. It seems to us that the court would have difficulty in finding that his financial condition improved in the interim so that he was not an indigent at the time he attempted his appeal. It is true, as the district court found, that there was deposited to his account on the prison books an amount that exceeded the cost of the filing fee, but it does not appear that the amount so deposited was

---

[3] The statutes relating to criminal appeals include Minn. St. 632.01, which provides that an appeal may be taken within 6 months after judgment; § 632.02, which provides for stay of execution and for service on the attorney general of the notice of appeal and the order staying proceedings, if any; § 375.08(1), which provides for a fee of $10 to be paid to the clerk of supreme court; and § 357.021, subd. 1(40), which provides for a fee of $5 to be paid to the clerk of district court.

available for his use or that he could get his hands on it. There is evidence that he was not aware of the fact that there had been transferred to his "spending deposit account" by the prison authorities the sum of $25 taken from a previous balance. The defendant argues that as a result of the control exercised over his account by the prison authorities there was only available to him the sum of $4.89 on November 14, 1957.[4]

■ While we have found no hard-and-fast rule for the determination of indigence, it would seem that each case should be viewed in light of its own particular facts. Even though it might be concluded that defendant could have secured the $15 fee to send to the clerk of court with his notice of appeal, he would still be without resources to provide for the transcript, and other necessary costs. It might be fairly said that his financial resources were so hopelessly inadequate that under any fair definition of the term defendant was a pauper.

■ Nor can we agree that the evidence fairly establishes that defendant failed to comply with the statute which requires service of a

---

[4] Minn. St. 243.24, formerly Minn. St. 1957, § 640.32, which relates to funds of prisoners, provides:

"Subdivision 1. Any money arising under section 243.23 shall be and remain under the control of the commissioner of corrections and shall be for the sole benefit of the prisoner, unless by special order of the commissioner of corrections it shall be used for rendering assistance to his family or dependent relatives, under such regulations as to time, manner and amount of disbursements as the commissioner of corrections may prescribe. Unless ordered disbursed as hereinbefore prescribed or for an urgency determined, in each case, by the warden or superintendent, at least one half of such earnings shall be set aside and kept by the institution in the public welfare fund of the state for the benefit of the prisoner and for the purpose of assisting him when he leaves the institution and if released on parole said sum to be disbursed to the prisoner in such amounts and at such times as the adult corrections commission may authorize and on final discharge, if any portion remains undisbursed, it shall be transmitted to the prisoner.

"Subd. 2. If the fund standing to the credit of the prisoner on his leaving the institution by discharge or on parole be less than $25, the warden or superintendent is directed to pay out of the current expense fund of the institutions sufficient funds to make the total of said earnings the sum of $25."

copy of the notice of appeal upon the attorney general. While it is true that there was evidence from the chief clerk in the attorney general's office that the notice had not been received, there is persuasive evidence to the contrary. The defendant testified that he mailed a copy of the notice to the attorney general on November 14, 1957, at the same time he attempted to file a notice of appeal with the clerk of court. The clerk of court received the copy of the notice of appeal, and the records of the State Prison corroborate the fact that on that date defendant sent a communication to the attorney general. It seems that the evidence that the notice of appeal was actually sent to the attorney general is more persuasive than the inferences to the contrary.

■ It is conceded that a pauper may appeal from the judgment of conviction without payment of a filing fee and that failure to permit such an appeal would constitute a denial of his constitutional rights under the equal protection clause of the Fourteenth Amendment. Smith v. Bennett, 365 U. S. 708, 81 S. Ct. 895, 6 L. ed. (2d) 39; Burns v. Ohio, 360 U. S. 252, 79 S. Ct. 1164, 3 L. ed. (2d) 1209.

■ In passing upon the issues presented by this case, it is necessary to keep in mind the recent decision of Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. ed. (2d) 811, which holds that the equal protection clause and the due process clause of the United States Constitution are violated when a state denies an indigent any of the necessary incidents of appeal, including right to counsel, and that a pauper convicted of a crime is entitled to the same opportunities to appeal his conviction as one who is financially able. Pate v. Holman (5 Cir.) 341 F. (2d) 764.

■ It seems to us that the controlling authority to be applied in this case is Burns v. Ohio, *supra*. In that case, the clerk of the Ohio Supreme Court refused to file the notice of appeal and motion for leave to appeal by a convicted defendant, telling him that the statutory filing-fee requirement took precedence over any other statutory provision allowing a pauper's affidavit in lieu of the fee. Following Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. ed. 891, the United States Supreme Court concluded (360 U. S. 257, 79 S. Ct. 1168, 3 L. ed. [2d] 1213) that "once the State chooses to establish appellate review in criminal cases, it

may not foreclose indigents from access to any phase of that procedure because of their poverty."

■ We have held, by numerous decisions, that timely notice of appeal and service of such notice upon the attorney general is jurisdictional. State v. Newman, 188 Minn. 461, 247 N. W. 576; State v. Alm, 246 Minn. 568, 75 N. W. (2d) 212; State v. Morrissey, 259 Minn. 563, 108 N. W. (2d) 10; State v. Collins, 260 Minn. 171, 109 N. W. (2d) 327; State v. Ettesvold, 263 Minn. 411, 117 N. W. (2d) 1; State v. Cage, 264 Minn. 196, 117 N. W. (2d) 919; 6 Minn. Dig. Criminal Law, Key No. 1081.

We are of the view, however, that jurisdiction should not be defeated by arbitrary or mistaken acts in the performance of clerical duties under circumstances where, as here, it appears that the petitioner did all that he could do to perfect his appeal within the time limited by statute. We are persuaded from the record before us that the steps taken by the petitioner in filing the notice of appeal, together with the pauper's affidavit and the evidence which supports the fact of mailing the notice of appeal to the attorney general within the proper time, all establish a compliance with the statutory requirements as to appeal, and that a valid appeal was, in fact, perfected, giving this court jurisdiction.

We, accordingly, treat defendant's petition as an application in the nature of a petition for postconviction relief.[5] We do not feel that the circumstances warrant the release of defendant in habeas corpus proceedings, and the order of the trial court in this respect is affirmed. Since we feel that defendant has, in fact, sufficiently complied with the statutes in perfecting his appeal, the case should be placed on the calendar of this court for hearing and determination, and an order to that effect is hereby entered. It is further ordered that the state public de-

---

[5] State ex rel. Cole v. Tahash, 269 Minn. 1, 129 N. W. (2d) 903; State ex rel. Branchaud v. Hedman, 269 Minn. 375, 376, 130 N. W. (2d) 628, 629, certiorari dismissed, 381 U. S. 907, 85 S. Ct. 1456, 14 L. ed. (2d) 289; State v. Clark, 270 Minn. 181, 132 N. W. (2d) 811; State ex rel. Smith v. Tahash, 272 Minn. 168, 174, 136 N. W. (2d) 617, 621; State v. DeCloux, 272 Minn. 94, 136 N. W. (2d) 657; State ex rel. Dinneen v. Tahash, 272 Minn. 7, 136 N. W. (2d) 847. See, State v. Pruitt, 264 Minn. 243, 244, 119 N. W. (2d) 32, 34.

fender be appointed to represent defendant and that the time for the filing of briefs and records on the appeal be extended to May 1, 1966.

Order denying release of defendant is affirmed.

Review of judgment of conviction is ordered.